IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CARMEN DELGADO,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF SALT LAKE, a body corporate and politic of the State of Utah, MARRIOTT HOTEL SERVICES INC., d/b/a SALT LAKE MARRIOTT AT 75 SOUTH WEST TEMPLE, and DOES I through V,<br><br>                    Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:15-CV-490 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Marriott Hotel Services Inc. d/b/a Salt Lake Marriott at 75 South West Temple's ("Marriott") Motion for Summary Judgment. For the reasons discussed below, the Court will deny the Motion.

I.  BACKGROUND

On June 28, 2013, Plaintiff was walking on the sidewalk between West Temple Street and the Salt Lake City Marriott Hotel building in Salt Lake City when her foot caught a portion of the sidewalk cement, which was higher than the adjoining paver stones, causing her to trip and fall. Plaintiff claims she suffered injuries as a result of her fall.

Marriott does not own or maintain that portion of the sidewalk where Plaintiff fell. Salt Lake City owns and maintains the sidewalk. Marriott does have a down spout near the area where Plaintiff fell. The down spout brings rain water from the roof. The water then washes

1

across the sidewalk to the gutter.[1]  Water, including water from the down spout, can wash the sand from underneath the paver stones causing them to drop, resulting in an uneven sidewalk.[2]

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[4]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[5]

## III.  DISCUSSION

Plaintiff brings a claim of negligence against Defendant Marriott.  A claim for negligence requires, among other things, the existence of a duty of care.[6]  The existence of a duty of care is a legal issue for the Court to decide.[7]  "Duty must be determined as a matter of law and on a categorical basis for a given class of tort claims."[8]

---

[1] Docket No. 21 Ex. 1, at 25:22–26:7.

[2] *Id.* Ex. 4, at 23:24–25:3.  There is evidence that other factors may have caused the uneven nature of the sidewalk where Plaintiff fell.  Docket No. 22 Ex. A, at 40:10–42:15.

[3] Fed. R. Civ. P. 56(a).

[4] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[5] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[6] *B.R. ex rel. Jeffs v. West*, 275 P.3d 228, 234 (Utah 2012).

[7] *Normandeau v. Hanson Equip., Inc.*, 215 P.3d 152, 157 (Utah 2009).

[8] *Jeffs*, 275 P.3d at 234.

The Utah Supreme Court has identified five factors that guide the determination of whether a duty exists. These include: (1) whether the defendant's allegedly tortious conduct consists of an affirmative act or merely an omission, (2) the legal relationship of the parties, (3) the foreseeability or likelihood of injury, (4) public policy as to which party can best bear the loss occasioned by the injury, and (5) other general policy considerations.[9] These factors are "analyzed at a broad, categorical level for a class of defendants" without focusing on the facts of a particular case.[10]

A. ACT OR OMISSION

The first factor distinguishes between acts (misfeasance) and omissions (nonfeasance). Acts of misfeasance involve active misconduct working positive injury on others while nonfeasance involves passive inaction, a failure to take positive steps to benefit others, or to protect them from harm not created by any wrongful act of the defendant.[11] This distinction is important because the law imposes a duty of care when an individual's affirmative acts work positive injury to others, while an omission generally gives rise to a duty only when there is a special relationship between the parties.[12] To survive summary judgment, Plaintiff must "establish, at a minimum, a dispute of fact about whether [Marriott's] conduct was an affirmative act."[13]

---

[9] *Id.* at 230.

[10] *Id.* at 235. Because the Court concludes that these factors dictate the finding of a duty of care in this situation, the Court need not address Plaintiff's alternative argument that a duty is imposed by statute.

[11] *Id.* at 231.

[12] *Id.*

[13] *Herland v. Izatt*, 345 P.3d 661, 673 (Utah 2015).

Defendant argues that its use of the down spout is nothing more than passive inaction that does not give rise to a duty of care. The Court disagrees. "The line between acts and omissions is sometimes subtle."[14] "Active misfeasance . . . is not confined to situations where an affirmative act directly causes the harm to the plaintiff."[15] The Utah Supreme Court has "characterized the inquiry as 'whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good.'"[16] In other words, "an alleged tortfeasor's conduct must have created a situation where harm will commonly or foreseeably result, such that his inaction would permit the already advancing, foreseeable harm to work its course."[17]

Marriott's acts of making use of the down spout had advanced to a stage where it had a duty to act in a reasonable manner to prevent injuries that could result from water from the down spout washing over the sidewalk. This is not a situation where Marriott simply allowed water to flow naturally over the sidewalk. Instead, Marriott made use of a down spout that artificially distributed water over the sidewalk, potentially resulting in the washing away of the foundation underneath the paver stones. This is more than just a passive act of failing to protect Plaintiff from a potentially dangerous condition on a city sidewalk. Rather, by artificially distributing

---

[14] *Scott v. Universal Sales, Inc.*, 356 P.3d 1172, 1182 (Utah 2015).

[15] *Cope v. Utah Valley State Coll.*, 342 P.3d 243, 255 (Utah 2014).

[16] *Scott*, 356 P.3d at 1182 (quoting *H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896, 898 (N.Y. 1928)). "[E]xamples of situations where actions had advanced to a stage where inaction would commonly result in injury include: (1) a surgeon who fails to sterilize instruments, causing an infection; (2) an engineer who fails to shut off steam; or (3) an automobile manufacturer that neglects to adequately inspect an automobile for defects before selling it to a consumer." *Cope*, 342 P.3d at 255 (citing *H.R. Moch Co.*, 159 N.E. at 898).

[17] *Herland*, 345 P.3d at 673.

4

water over the sidewalk, Marriott launched a force or instrument of potential harm. Thus, this factor weighs in favor of imposing a duty of care on Defendant.

Marriott argues that Plaintiff cannot show that its use of the down spout caused the alleged gap in the sidewalk. This argument fails for two reasons. First, as set forth above, there is evidence from which a reasonable jury could conclude that Marriott's use of the down spout was at least a partial cause of the displacement in the sidewalk. To survive summary judgment Plaintiff need only show a disputed fact as to whether Marriott's conduct was an affirmative act, which she has done. Second, Marriott's argument goes to breach and causation, not duty. The existence of a duty is determined at a broad, categorical level and is not dependent on the particular facts of a case. Therefore, the argument does not change the Court's conclusion that this factor weighs in favor of finding a duty of care.

B.  RELATIONSHIP OF THE PARTIES

The first and second duty factors are interrelated.[18] "Generally, in Utah, '[t]here exists no obligation on the part of an abutter to keep the sidewalk adjoining his premises in repair, nor is he liable for any state of disrepair.'"[19] However, there are exceptions to this general rule, including where the landowner "creates through use or otherwise some unsafe or dangerous condition."[20] Because Plaintiff has at least raised a dispute of fact as to whether Marriott's

---

[18] *Jeffs*, 275 P.3d at 231.

[19] *Smith v. Bank of Utah, Inc.*, 157 P.3d 817, 819 (Utah 2007) (quoting *Tripp v. Granite Holding Co.*, 450 P.2d 99, 100 (1969)).

[20] *Tripp*, 450 P.2d at 100; *see also* 2-3 Louis R. Frumer & Melvin I. Friedman, Personal Injury: Actions, Defenses, and Damages § 3.03[2] (hereinafter, "Personal Injury") ("The owner or possessor of land abutting a public sidewalk or other public way does not, solely because of being an abutter, owe to the public a duty to maintain those public ways in a safe condition. However, there are a number of recognized exceptions to this rule: the abutting owner uses the

alleged negligence was the result of an affirmative act, Plaintiff does not need to establish a special relationship between herself and Marriott in order to survive summary judgment.

C.  FORESEEABILITY OR LIKELIHOOD OF THE INJURY

Foreseeability in the context of a duty of care "relates to 'the general relationship between the alleged tortfeasor and the victim' and 'the general foreseeability' of harm."[21] "This means that foreseeability in duty analysis is evaluated at a broad, categorical level. In duty analysis, foreseeability does not question 'the specifics of the alleged tortious conduct' such as 'the specific mechanism of the harm.'"[22] Thus, the Court does not consider whether Marriott could have foreseen the specific events that led to Plaintiff's injury. "The appropriate foreseeability question for duty analysis is whether a category of cases includes individual cases in which the likelihood of some type of harm is sufficiently high that a reasonable person could anticipate a general risk of injury to others."[23]

The parties have not addressed this question, but it seems that the relevant category of cases consists of landowners diverting water by artificial means onto an abutting sidewalk. "And the foreseeability question is whether there are circumstances within that category in which a [landowner] could foresee injury."[24] The Court believes there are.

---

sidewalk for a special purpose; the abutting owner's activities create a dangerous or hazardous condition on the sidewalk; the abutting owners negligently construct or repair the sidewalk; or a statute, ordinance, or municipal charter expressly imposes tort liability on the abutting owners for injuries caused by their negligent maintenance.") (footnotes omitted).

[21] *Jeffs*, 275 P.3d at 235 (quoting *Normandeau*, 215 P.3d at 158).

[22] *Id.* (quoting *Normandeau*, 215 P.3d at 158).

[23] *Id.* at 235–36.

[24] *Id.* at 236.

There are instances where diverting water over a public sidewalk will result in little foreseeable risk. However, there are instances when doing so may involve a highly foreseeable risk. The most obvious example is where a landowner diverts water onto a sidewalk that results in the accumulation of ice. "An abutting owner may be liable . . . if water from the property is permitted by artificial means to flow onto the public sidewalk, where it freezes."[25] Salt Lake City has recognized this potential danger and prohibits property owners from permitting water from the roof of any structure to be discharged and spread across a sidewalk.[26] Because artificially discharging water onto a public sidewalk creates a foreseeable risk of harm, this factor weighs in favor of establishing a duty.

---

[25] Personal Injury § 3.03[3][b] & n.59 (collecting cases); *see also* 40 Am. Jur. 2d Highways, Streets, & Bridges § 535 ("One who so constructs or maintains a structure upon his or her premises as to cause an artificial discharge or accumulation of water upon a public way, which, by its freezing, makes the use of the way dangerous, will be held liable to one who is rightfully on the way and exercising due care and is injured because of such dangerous condition."); 63 C.J.S. Municipal Corporations § 999 ("It is the duty of a property owner to exercise ordinary care to guard the public from injury from any artificial accumulation and discharge on the sidewalk of surface water that might freeze and make the walk dangerous. An abutting owner is liable for injuries caused by ice forming on the sidewalk by the freezing of water that the owner has artificially discharged from his or her premises at a time when the natural result would be to form ice.") (footnotes omitted).

[26] Salt Lake City, Utah Code § 14.20.060 ("It is unlawful for any person owning, occupying or having control of any premises to suffer or permit water from the roof or eaves of any house, building or other structure, or from any other source under the control of such person, to be discharged and spread upon the surface of any sidewalk."); *see also* International Building Code § 3201.4 ("Drainage water collected from a roof, awning, canopy or marquee, and condensate from mechanical equipment shall not flow over a public walking surface.").

D.   PUBLIC POLICY

The fourth factor is public policy as to which party can best bear the loss occasioned by the injury. Under this factor, the Court does not consider "the depth of [the parties'] pockets," but rather which of them "is best situated to take reasonable precautions to avoid injury."[27]

> Typically, this factor would cut against the imposition of a duty where a victim or some other third party is in a superior position of knowledge or control to avoid the loss in question. In such circumstances, the defendant is not in a position to bear the loss, not because his pockets are shallow, but because he lacks the capacity that others have to avoid injury by taking reasonable precautions.[28]

Here, Marriott argues that the city is in a superior position of knowledge and control because the city owns and maintains the sidewalk. The Court disagrees, to an extent. While the city certainly has an interest in taking precautions to avoid injuries sustained by pedestrians walking down city-owned sidewalks, abutting landowners are in an equal, if not superior, position of knowledge of the conditions of the sidewalks surrounding their property and the potential hazards they may pose. After all, a landowner is much more likely to observe a potentially dangerous condition on or near his property than is a city official. A Marriott employee testified that they looked for unsafe conditions[29] and two Marriott employees stated that they regularly walked by the area where Plaintiff fell.[30] The city, on the other hand, only inspected the area a couple of times per year.[31] Salt Lake City code reflects the reality that

---

[27] *Jeffs*, 275 P.3d at 236.

[28] *Id.* (footnote omitted).

[29] Docket No. 21 Ex. 1, at 10:2–7.

[30] Marriott's director of engineering testified that he walked by the area multiple times, though he did not see the displacement of the sidewalk. *Id.* at 15:16–16:1. Marriott's loss prevention supervisor testified that he had walked by the area where Plaintiff fell numerous times and recalled seeing the defective condition of the sidewalk. Docket No. 21 Ex. 2, at 31:15–32:3.

[31] *Id.* Ex. 1, at 13:9–15.

8

landowners are often in a better position to observe defects. The city requires landowners to report defective concrete in front of or along the side of their property, correct the problem, and take temporary steps as needed to protect the public.[32] Moreover, Marriott, not the city is in the best position to control the discharge of rainwater from its building. Marriott chose to do this through the use of the down spout and there is no evidence that the city played any role in that decision. Based upon these factors, this factor weighs in favor of finding a duty of care.

E.      OTHER POLICY CONSIDERATIONS

Finally, the Court considers other general policy considerations. Marriott argues that this factor weighs against the imposition of a duty because the city "is eminently more suitable to handle these situations than the private landowners whose businesses do not include any kind of repair services."[33] Marriott argues that it would be better for the city to own, maintain, and oversee the city sidewalks, rather than imposing that burden on adjacent property owners.

Marriott is undoubtedly correct that the city is better equipped than local businesses to maintain and oversee its sidewalks. However, imposing a duty of care in this situation does not impede the city's ability to do so. Instead, it allows for compensation for those who are injured on city sidewalks by the negligent acts of abutting landowners. "Providing such compensation both 'protect[s] societal interests in human life, health[,] and safety' and deters harmful behavior

---

[32] Salt Lake City, Utah Code § 14.32.305. Defective concrete is defined, in part, as "[t]he displacement of sidewalk, curb, gutter and driveway approach sections or appurtenances either horizontally or vertically to a point that one section or any part of a section is separated by at least one-half inch (1/2") from the other." *Id.* § 14.32.015. There is evidence that the area where Plaintiff fell met this definition. Docket No. 21 Exs. 9, 10.

[33] Docket No. 22, at 13.

9

by requiring individuals whose conduct harms those around them to bear the full cost of their actions."[34]

Marriott further argues that public policy favors no duty of care in this situation because its building was in place before the paver stones were installed. However, Marriott has failed to provide any evidence to support this argument. In its Motion, Marriott stated: "It is unclear whether the sidewalk pavers were installed before or after the spout, but it is most likely that the spout came first."[35] To support this statement, Marriott referred to a portion of the deposition of Wynn Pead. Mr. Pead's deposition provides absolutely no support for this statement. Indeed, the portion cited to by Marriott is a question from counsel, not any statement from Mr. Pead.[36] And the response from Mr. Pead appears to contradict, rather than support, Marriott's argument. Thus, there is no competent evidence before the Court as to whether the down spout or the pavers came first. Further, this argument goes more to the issues of breach, causation, and the allocation of fault, and does not alter the Court's duty analysis.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 20) is DENIED.

---

[34] *Scott*, 356 P.3d at 1185 (quoting *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 592 N.W.2d 201, 214 (Wis. 1999)).

[35] Docket No. 20, at 4.

[36] *Id.* Ex. 4, at 43:5–8.

DATED this 29th day of June, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge